UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON
CASE NO. _____

**JOHN DOE**                                                                                          **PLAINTIFF**

V.

**EASTERN KENTUCKY UNIVERSITY**                                              **DEFENDANTS**

**AND**

**BOB BROWN**, individually and in his official
capacity as former and/or current Director of Student Conduct and
Community Standards at Eastern Kentucky University and/or
his official capacity as current Executive Director of Housing and Residential Life at
Eastern Kentucky University

**AND**

**EMILY JO DAVIS**, individually and in her official
capacity as current Director of Student Conduct and
Community Standards at Eastern Kentucky University

**AND**

**DR. EUGENE PALKA**, individually and in his official
capacity as Vice President for Student Success at
Eastern Kentucky University

**AND**

**BRIAN MULLINS**, individually and in his official capacity as
Chief of Police at Eastern Kentucky University

**AND**

**KENNA MIDDLETON**, individually and in her official capacity
As Dean of Students at Eastern Kentucky University

**AND**

**APRIL BARNES**, individually and in her official capacity as
former and/or current Executive Director of Housing and

**Residential Life and Eastern Kentucky University**

**AND**

**SGT. MARCUS JOHNSON, individually and in his official capacity as a police officer of Eastern Kentucky University**

**AND**

**PTL. DREW ROGERS, individually and in his official capacity as a police officer of Eastern Kentucky University**

**AND**

**SGT. TIMOTHY GUNN, individually and in his official capacity as a police officer of Eastern Kentucky University**

<u>**COMPLAINT WITH JURY DEMAND**</u>

Comes now the Plaintiff, by and through counsel, and for his Complaint with Jury Demand states as follows:

<u>**PRELIMINARY STATEMENT**</u>

1. This is a damage action under 42 U.S.C. § 1983, Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681-1688, and supplemental state law claims as the result of the violation of Plaintiff's civil rights and unlawful actions taken by the named Defendants occurring on or about September 26, 2018 and continuing to the present.

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

2. Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

3. At all relevant times herein, Plaintiff John Doe was a resident of Richmond, Madison County, Kentucky and a student (freshman) of Defendant Eastern Kentucky University. He was attending Eastern Kentucky University on a scholarship provided under the United States

Army's Reserve Officer Training Corps (ROTC) where he was aspiring for a career in the United States Army as a commissioned officer.

4.   At all relevant times herein, Defendant Eastern Kentucky University ("EKU") was a comprehensive university established by the Commonwealth of Kentucky through the Kentucky General Assembly and funded through state and federal funds. EKU's main campus is located in Richmond, Madison County, Kentucky.

5.   At all relevant times herein, Defendant Bob Brown ("Brown") was and is employed with EKU, and acting in his individual capacity as former and/or current Director of Student Conduct and Community Standards at EKU and/or his official capacity current Executive Director of Housing and Residential Life at EKU.

6.   At all relevant times herein, Defendant Emily Jo Davis ("Davis") was and is employed with EKU, and acting in her individual capacity, and her official capacity as Director of Student Conduct and Community Standards at EKU.

7.   At all relevant times herein, Defendant Dr. Eugene Palka ("Dr. Palka") was and is employed with EKU, and acting in his individual capacity, and his official capacity as Vice President for Student Success at EKU.

8.   At all relevant times herein, Defendant Brian Mullins ("Mullins") was and is employed with EKU, and acting in his individual capacity, and his official capacity as Chief of Police at EKU.

9.   At all relevant times herein, Defendant Kenna Middleton ("Middleton") was and is employed with EKU, and acting in her individual capacity, and her official capacity as Dean of Students at EKU.

10. At all relevant times herein, Defendant April Barnes ("Barnes") was and is employed with EKU, and acting in her individual capacity, and her official capacity as Executive Director of Housing and Residential Life at EKU.

11. At all relevant times herein, Defendant Marcus Johnson ("Johnson") was and is employed with EKU, and acting in his individual capacity, and his official capacity as a police sergeant at EKU.

12. At all relevant times herein, Defendant Drew Rogers ("Rogers") was and is employed with EKU, and acting in his individual capacity, and his official capacity as a police officer at EKU.

13. At all relevant times herein, Defendant Timothy Gunn ("Gunn") was and is employed with EKU, and acting in his individual capacity, and his official capacity as a police sergeant at EKU.

14. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331. Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367.

15. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

16. Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

17. John Doe enrolled as a student at EKU for the fall 2018 semester. He was attending EKU on an ROTC scholarship through the United States Army. Doe had aspirations of entering the United States Army full time as a commissioned officer after his successful graduation from EKU.

18. Doe's place of residence while at EKU that semester was Telford Hall located on EKU's main campus in Richmond, Madison County, Kentucky. Telford Hall is a coed dormitory, which is secured, in part, by a video surveillance system with cameras located in the elevators of the dormitory.

19. During his time at EKU that fall semester, Doe became acquainted with a female student (R.T.) who also lived in Telford Hall. Doe and this female student began to experience romantic feelings for one another.

20. On September 14, 2018, approximately close to midnight, Doe was in his dorm in Telford Hall with two male friends, R.T., and two of her friends. The six were talking with one another and playing a mini-hoop basketball game. During the game, Doe blocked a shot attempt by one of the individuals which accidently ricocheted into the eye of R.T. Doe aided R.T. by providing her with a tissue as her eye began to tear up. When the female student approached the mirror in Doe's dorm room, he jokingly expressed that she needed to apologize for using his mirror.

21. At this point in the night, Doe's two male friends left the dorm room to go to bed. R.T. and her two friends stayed behind in Doe's dorm room. While in the dorm room, Doe and R.T. flirted with one another, with R.T. lying face down on Doe's bed and Doe sitting on her thigh/buttocks area. Doe soon stopped sitting on R.T., and the four students continued to talk among each other, with Doe telling R.T. that he had a romantic crush on her. After some time, the three females left Doe's dorm room.

22. After the three females left Doe's dorm room, Doe and R.T. communicated over the social media app Snapchat. R.T. informed Doe that she wanted to come back down to his room. Doe informed R.T. that she could return if she wanted to.

23. At approximately 1:30 a.m. on the morning of Saturday, September 15, 2018, Doe took a shower and returned to his dorm room, at which point R.T. returned to his room. The two then engaged in consensual, intimate contact for a period of time.

24. Doe left campus in the late morning/early afternoon of September 15, 2018 to attend an ROTC drill in Lexington, Kentucky, and did not return to campus until late afternoon on Sunday, September 16, 2018.

25. Between Doe's return to campus on September 16, 2018 and the morning of Monday, September 17, 2018, Doe spoke with R.T.'s ex-boyfriend (J.B.) and informed J.B. briefly about the occurrence in the early morning of September 15, 2018.

26. Later in the afternoon of September 17, 2018 (and after he had spoken to J.B.), Doe was approached by a friend and informed that R.T. was telling other students that Doe had assaulted her on the night of September 14, 2018 while in the presence of her two friends.

27. Doe sent a Snapchat message to R.T. on the night of Monday, September 17, 2018 to find out why she was upset with him, as he had just seen her around lunch time when they dined together at the same table with several of their fellow students/friends.

28. Upon information and belief, R.T. approached E.P., a fellow male student, and told him Doe had assaulted her by strangling her on the night of September 14, 2018. Upon further information and belief, E.P. reported the incident to a Residence Advisor ("RA") of Telford Hall, who informed the Eastern Kentucky Police Department.

29. On September 20, 2018, Defendants Johnson and Rogers of the EKU police department arrived at Telford Hall to investigate R.T.'s allegations.

30. Body camera footage of Defendants Johnson and Rogers demonstrates that instead of sequestering R.T. and her two friends that were present the night of the alleged incident, they

allowed R.T. and her two friends to be in the same room while they wrote out their statements. It is apparent from the body camera footage that, on at least one incident, two of the girls were looking at the statement of the other while it was being written. Not surprisingly, the three written statements were quite similar, though not identical and included several discrepancies of what they believe occurred.

31. Upon information and belief, Defendant Johnson and/or Rogers also presented the three females with forms to complete for purposes of compliance and/or complaint through Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681-1688 which started the EKU disciplinary process against Doe. The Resident Hall Coordinator arrived to ask if R.T. wanted to relocate to another dorm. R.T. declined the offer.

32. After speaking with the three female students, Defendants Johnson and Rogers went to Doe's room to interrogate him. Doe's statements to Defendants Johnson and Rogers were also captured on body camera. During the interrogation, Doe described to Defendants Johnson and Rogers the events of the evening. His recollection of events was the same as R.T. and her two friends until it came to the part where he was accused of assaulting R.T. He explained that he was joking and flirting with R.T. following the moment the mini basketball hit her in the eye. He informed the Defendant officers that she was flirting back. After briefly sitting on R.T. (which Doe perceived as further flirting, and believed R.T. also believed to be flirting), he told the Defendant officers that he moved over to his bed where the four proceeded to engage in conversation. He also informed them of the events following the time the three females left his room, which was left out of the statement provided to the Defendant officers by R.T. Finally, Doe informed the Defendant officers (in fact, almost implored them) that Telford dorm's security monitors (particularly the elevator cameras) would have captured R.T. returning to Doe's room

7

alone in the early morning of September 15, 2018. Defendant Johnson is clearly heard on the body camera footage informing Doe that "dispatch" would get a copy of the security footage to corroborate Doe's recollection of events.

33. Defendants Johnson and Rogers also briefly interviewed Doe's two male friends present the night of the alleged incident.

34. This is where the investigation into the alleged incident on the night of September 14, 2018 stopped. Upon information and belief, none of the named Defendants attempted to procure the security camera footage from Telford dorm on the night in question. Defendants Johnson and Rogers did not re-interview R.T. to ask her about Doe's recollection of her return to his room in the early morning of September 15, 2018 for the consensual intimate encounter. Defendants Johnson and Rogers failed to take any meaningful steps to further investigate and/or corroborate R.T.'s allegations, and instead, on September 25, 2018, Defendant Gunn filed an affidavit and Complaint against Doe, which resulted in his arrest and incarceration, and charged him with Assault 4th Degree (no visible injury) and Unlawful Imprisonment 2nd Degree, both class A misdemeanors.

35. Doe spent two days in jail before his bond could be posted, at which point he was released on an electronic monitor.

36. While he was incarcerated, Doe was visited by a currently unknown employee, agent, and/or representative of EKU and informed that he would never be returning to school without proving his innocence and that his days in the ROTC were over.

37. This same person gave Doe a letter dated September 26, 2018, in which he was informed by Defendant Brown, who was writing on behalf of the Office of Student Conduct & Community Standards, that he was "suspending [Doe] from Eastern Kentucky University on an interim basis

from Eastern Kentucky University until your case can be heard by the Student Disciplinary Council." The letter also informed Doe that he was entitled to a hearing before the Student Disciplinary Council which would "be held on a date that is mutually agreeable for you and our office." Doe was forbidden from being on campus and having contact with EKU students "connected with the incidents." Defendant Brown carbon copied Defendants Dr. Palka, Mullins, Middleton, and Barnes on the letter, which indicates upon information and belief that they also partook in the decision to suspend Doe from EKU, and all said Defendants participated in the decision to deny Doe his hearing under the EKU disciplinary policies and procedures.

38. Upon information and belief, sometime between September 26, 2018 and the present, Defendant Davis became the Director of Student Conduct and Community Standards at EKU. During her tenure as Director of Student Conduct and Community Standards at EKU, Doe has not been provided a hearing under the EKU's disciplinary policies and procedures. Defendant Davis has effectively adopted and/or ratified the actions of the other individual Defendants by failing to provide Doe a disciplinary hearing.

39. EKU has implemented policies and procedures concerning Student Conduct, Community Standards, and Academic Integrity. The policy provides the following pertinent information and student rights:

A)  EKU's disciplinary system is coordinated by the Office of Student Conduct and Community Standards.

B)  The Student Disciplinary Council is designated by EKU's Board of Regents to hear those student disciplinary cases which the gravity of the allegation suggests a possible sanction of suspension or expulsion.

C) The disciplinary policy contains safeguards to ensure due process to students allegedly responsible for violations of EKU's disciplinary rules.

D) Interim sanctions may be imposed by the Dean of Students or designee, which are in effect until student affected has a hearing.

E) The Office of Student Conduct and Community Standards assigns cases to hearing bodies according to the severity of the incident.

F) The "burden of proof" lies solely with the person who files the complaint against the affected student.

G) Students who are implicated in student misconduct are provided the following rights:

1) Notification: the student shall be notified of the policy violation alleged to be violated. The notification will include the time and place of the hearing and the hearing body to which the case is assigned. Notification is provided through EKU's email system;

2) A hearing;

3) Witnesses;

4) A silent advisor;

5) Written decision; and

6) Appeal.

40. To this date, Doe has never been provided his hearing in front of the Student Disciplinary Council, nor was he ever provided notice of a scheduled hearing date. Instead, he has been suspended from school since September 26, 2018, and has lost his ROTC scholarship. He has effectively been denied his right to a hearing and been expelled from school.

41. Upon information and belief, no female student at EKU has ever been denied a hearing as the result of a suspension, including but not limited to, suspension because of allegations involving endangering or threatening behavior or violations of law.

42. As a result of the criminal charges that were filed, Doe was forced to hire counsel to defend the charges. He hired the Hon. Michael Eubanks of Richmond, Kentucky and the firm Shumate, Flaherty, Eubanks, & Baechtold, P.S.C.

43. Upon information and belief, in defense of Doe, Mr. Eubanks was able to procure by way of interview many of the facts already described in this Complaint which indicate neither R.T., nor any of her friends, alleged any reprehensible behavior by Doe on the night of September 14, 2018 until after Doe had spoken with R.T.'s ex-boyfriend. He established that no one called any authorities the night of the alleged incident, that R.T.s friends did not use any electronic devices to capture Doe allegedly assaulting R.T. on the night in question, and that no one took photographs or video of the alleged bruising R.T. complained of on her neck following the incident. Despite this information, the prosecution of Doe continued.

44. Mr. Eubanks was not able to retrieve the extremely important security footage from Telford dorm, however, because the footage was not available. Nor did he ever receive a copy of the security camera footage from the EKU police or the prosecution in Doe's case.

45. On February 22, 2019, Doe went to jury trial on the two criminal charges. During the trial, the proof developed the long periods of time between the alleged incident and the report of R.T.'s alleged assault; the failure of Defendants Rogers and Johnson to sequester R.T. and her two friends when gathering their eye witness accounts of what occurred; the failure of Defendants Johnson and Rogers to procure Snapchat messages of any of the parties, text messages of any of the parties involved, any photographs or videos of any injuries from the

alleged incident to corroborate the statements of R.T. and her friends; that the Defendant officers essentially ignored Doe's statements about the events of the night; the failure of Defendants Johnson and Rogers to even try to procure the elevator security video which would have corroborated Doe's version of events in question; and the failure of Defendants Johnson and Rogers to question R.T. about returning to Doe's room on the morning of September 15, 2018. In sum, it became evident that Defendants Rogers, Johnson and Gunn, in their investigation of this incident, purposely ignored exculpatory evidence, purposely ignored evidence which would have indicated R.T.'s allegations were fabricated, and instead filed the case against Doe on the basis of inconsistent statements of R.T. and her two friends.

46. According to the official trial record, the jury was excused to receive Doe's case at approximately 3:53 p.m. EST. After the jury returned its verdict, the Madison County District Court Judge read the verdict in open court at approximately 4:27 p.m. EST. In other words, it only took the jury approximately thirty minutes to return their verdict in the case. The jury acquitted Doe of both charges.

47. It is clear Defendants Johnson, Rogers, and/or Gunn, because of Doe's gender, discounted, refused to retrieve, and/or outright ignored any evidence which would indicate Doe did not assault or imprison R.T., ignored Doe's statements regarding the incident, and instead pursued these charges against Doe on nothing more than the uncorroborated and inconsistent statement of three female students. Defendants Davis, Brown, Dr. Palka, Mullins, Middleton, and Barnes clearly relied on and adopted the discriminatory actions of Defendants Johnson, Rogers, and Gunn when they suspended Doe and effectively expelled him from school by failing to give him a hearing.

48. As a result of the actions of the Defendants in this matter as explained herein, Doe has lost his ROTC scholarship and his hope of a career in the United States Army as a commissioned officer, he has lost his ability to further his education under the scholarship provided him by the ROTC program, he was denied a hearing under EKU's disciplinary policies and procedures, he will not benefit from an EKU education, he has incurred the expense of defending himself against the hammer that is Kentucky's criminal justice system because of the maliciousness and ignorance of law enforcement, and he has had to endure the experience of having his friends and former fellow students think he is a monster.

## COUNT I

(42 U.S.C. § 1983 – DENIAL OF PROCEDURAL DUE PROCESS -
DEFENDANTS BROWN, DAVIS, DR. PALKA, MULLINS, MIDDLETON, AND BARNES)

49. Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

50. The Plaintiff, a student at EKU, when facing suspension and/or expulsion from the university is entitled to due process before he may be deprived of his interest in continuing his education.

51. As alleged herein, the actions of Defendants Davis, Brown, Dr. Palka, Mullins, Middleton, and Barnes, acting in their individual capacities, who at all times were acting under the color of state law, deprived the Plaintiff of due process in violation of the Fourteenth Amendment to the United States Constitution and state law by failing to provide him a hearing on the issues presented in the notice provided to him in which he was suspended and effectively expelled from school.

52. As a direct and proximate result of Defendants' actions, the Plaintiff has and will continue to suffer irreparable harm, injury and damages, including but not limited to the denial of

educational opportunities, denial of the ability to receive a degree from EKU or ever attend it again, a permanent disciplinary record which he will have to contend with and explain for the rest of his life, denial of future educational and employment opportunities, including service in the United States Army as a commissioned officer, damage to his reputation and associations in the community and imposition of a stigma which significantly interferes with his ability to take advantage of future educational and employment opportunities, loss of earning capacity, past, present and future emotional distress, embarrassment, and humiliation, and loss of personal and professional reputation.

## COUNT II

(42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS –
DEFENDANTS JOHNSON, ROGERS, GUNN, BROWN, DAVIS, DR. PALKA, MULLINS, MIDDLETON, AND BARNES)

53. Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

54. The Fourteenth Amendment to the United States Constitution provides the Plaintiff with a substantive right to continue his education free from arbitrary and malicious state interference.

55. The actions of Defendants Johnson, Rogers, Gunn, Davis, Brown, Dr. Palka, Mullins, Middleton, and Barnes, acting in their individual capacities, and under the color of state law as alleged herein were not rationally related to any legitimate government interest.

56. In the alternative, the actions of said Defendants as alleged herein so shock the conscience as to constitute a violation of Plaintiff's right to substantive due process.

57. As a direct and proximate result of Defendants' actions, the Plaintiff has and will continue to suffer irreparable harm, injury and damages, including but not limited to the denial of educational opportunities, denial of the ability to receive a degree from EKU or ever attend it

again, a permanent disciplinary record which he will have to contend with and explain for the rest of his life, denial of future educational and employment opportunities, including service in the United States Army as a commissioned officer, damage to his reputation and associations in the community and imposition of a stigma which significantly interferes with his ability to take advantage of future educational and employment opportunities, loss of earning capacity, past, present and future emotional distress, embarrassment, and humiliation, and loss of personal and professional reputation.

## COUNT III

(42 U.S.C. § 1983 AND STATE LAW – FALSE ARREST AND MALICIOUS PROSECUTION –
DEFENDANTS JOHNSON, BROWN, AND/OR GUNN)

58. Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

59. The Fourth Amendment to the United States Constitution provides the Plaintiff to be free from false arrest and malicious prosecution.

60. As alleged herein, the actions of Defendants Johnson, Brown, and/or Gunn, in their individual capacities, and acting under the color of state law, constitute false arrest and malicious prosecution. Defendants, with reckless disregard for the truth of the events of the night of September 14, 2018, refused, intentionally failed, and/or intentionally ignored essential facts which if acquired would have mitigated against and/or nullified probable cause that the Plaintiff assaulted or imprisoned R.T. The facts as alleged herein also demonstrated said Defendants influenced and/or participated in the decision to prosecute the Plaintiff.

61. Following his arrest, detention, and home incarceration following the charges filed against him, the Plaintiff was forced to defend himself all the way through a jury trial in the

matter, in which he was acquitted of all charges on February 22, 2019 after the jury deliberated for approximately thirty minutes.

62. As a direct and proximate result of Defendants' actions, the Plaintiff has and will continue to suffer irreparable harm, injury and damages, including but not limited to his arrest, detention, and home incarceration following the filing of the criminal complaint, his suspension and expulsion from EKU, attorneys' fees and expenses in defending the criminal matter, the denial of educational opportunities, denial of the ability to receive a degree from EKU or ever attend it again, a permanent disciplinary record which he will have to contend with and explain for the rest of his life, denial of future educational and employment opportunities, including service in the United States Army as a commissioned officer, damage to his reputation and associations in the community and imposition of a stigma which significantly interferes with his ability to take advantage of future educational and employment opportunities, loss of earning capacity, past, present and future emotional distress, embarrassment, and humiliation, and loss of personal and professional reputation.

## COUNT IV

(42 U.S.C. § 1983 – EQUAL PROTECTION – DEFENDANTS JOHNSON, ROGERS, GUNN, BROWN, DAVIS, DR. PALKA, MULLINS, MIDDLETON, AND BARNES)

63. Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

64. The Fourteenth Amendment to the United States Constitution provides that no state shall "deny any person within its jurisdiction the equal protection of the law." The Plaintiff, as a citizen of the Commonwealth of Kentucky, enjoys this right.

65. As alleged herein, the actions of Defendants Johnson, Rogers, Gunn, Davis, Brown, Dr. Palka, Mullins, Middleton, and Barnes, acting in their individual capacities, and under the color

of state law, deprived the Plaintiff of equal protection. Defendants, throughout the initial investigation, throughout the criminal proceedings in this matter, and even to date, have displayed discriminatory animus towards the Plaintiff because of his male gender. His statements concerning the events in question on September 14, 2018 were ignored, while the uncorroborated statements of his female accusers were relied upon to set in motion the events described in this Complaint. Plaintiff implored Defendants Johnson and Rogers to secure security video footage from Teleford dorm on the night in question, which they intentionally refused to do. Upon information and belief, no female student at EKU has been denied the right to a disciplinary hearing such as was done, and continues to be done, to the Plaintiff.

66. Defendants have no compelling or important governmental interest, or rational basis, for treating the Plaintiff differently than female students, because he is male.

67. As a direct and proximate result of Defendants' actions, the Plaintiff has and will continue to suffer irreparable harm, injury and damages, including but not limited to his arrest, detention, and home incarceration following the filing of the criminal complaint, his suspension and expulsion from EKU, attorneys' fees and expenses in defending the criminal matter, the denial of educational opportunities, denial of the ability to receive a degree from EKU or ever attend it again, a permanent disciplinary record which he will have to contend with and explain for the rest of his life, denial of future educational and employment opportunities, including service in the United States Army as a commissioned officer, damage to his reputation and associations in the community and imposition of a stigma which significantly interferes with his ability to take advantage of future educational and employment opportunities, loss of earning capacity, past, present and future emotional distress, embarrassment, and humiliation, and loss of personal and professional reputation.

## COUNT V

(TITLE IX – DEFENDANTS EKU, JOHNSON, ROGERS, GUNN, BROWN, DAVIS, DR. PALKA, MULLINS, MIDDLETON, AND BARNES)

68. Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

69. As alleged herein, Defendant EKU, and Defendants Johnson, Rogers, Gunn, Davis, Brown, Dr. Palka, Mullins, Middleton, and Barnes, acting in their individual and official capacities, caused the Plaintiff to be subject to the EKU disciplinary policies and procedures because of the events of September 14, 2018 and denied him a hearing regarding the allegations because of gender bias, resulting in his suspension and effectively his expulsion from EKU.

70. In the alterative, as alleged herein, Defendant EKU, and Defendants Johnson, Rogers, Gunn, Davis, Brown, Dr. Palka, Mullins, Middleton, and Barnes, acting in their individual and official capacities, selectively enforced EKU's disciplinary policies and procedures against the Plaintiff because of his gender, upon information and belief, treating him differently than female students.

71. In the alternative, as alleged herein, Defendant EKU, and Defendants Johnson, Rogers, Gunn, Davis, Brown, Dr. Palka, Mullins, Middleton, and Barnes, acting in their individual and official capacities, suspended the Plaintiff and refused to allow him a hearing as prescribed by EKU disciplinary policies and procedures because of preconceived notions that when a female has accused a male of assault, the assault must have occurred because of gender differences between males and females.

72. As a direct and proximate result of Defendants' actions, the Plaintiff has and will continue to suffer irreparable harm, injury and damages, including but not limited to the denial of educational opportunities, denial of the ability to receive a degree from EKU or ever attend it

again, a permanent disciplinary record which he will have to contend with and explain the for rest of his life, denial of future educational and employment opportunities, including service in the United States Army as a commissioned officer, damage to his reputation and associations in the community and imposition of a stigma which significantly interferes with his ability to take advantage of future educational and employment opportunities, loss of earning capacity, past, present and future emotional distress, embarrassment, and humiliation, and loss of personal and professional reputation.

WHEREFORE, the Plaintiff respectfully demands judgment against the Defendants individually, joint and severally as follows:

A. For trial by jury on all issues so triable;

B. For an award of compensatory damages against the named Defendants;

C. For an award of punitive damages against the Defendants so named in their individual capacities;

D. For recovery of the Plaintiff's costs, including reasonable attorneys' fees;

E. For prejudgment interest;

F. And for all other relief to which the Plaintiff may be entitled.

RESPECTFULLY SUBMITTED,

ROUSH & STILZ, P.S.C

/s/ W. Kash Stilz, Jr.
W. KASH STILZ, JR.
19 West Eleventh Street
Covington, Kentucky 41011-3003
(859) 291-8400 telephone
(859) 291-6555 facsimile
kash@roushandtilzlaw.com
ATTORNEYS FOR PLAINTIFF